UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| NIGEL ANTHONY HIBBERT (A-Number: 208-593-916),<br><br>Petitioner,<br><br>v.<br><br>WARDEN, CENTRAL VALLEY ANNEX DETENTION FACILITY, *et al.*,<br><br>Respondents. | Case No.  1:26-cv-4441-DC-JDP<br><br><br>ORDER; FINDINGS AND RECOMMENDATIONS |

Petitioner Nigel Anthony Hibbert, a citizen of Jamaica, entered the United States in September 2015 and requested asylum.  He was released on bond in May 2016 and then re-detained by ICE on May 13, 2026 following an arrest by local authorities.  Petitioner, proceeding pro se, seeks a writ of habeas corpus under 28 U.S.C. § 2241.  For the following reasons, I recommend that the petition be granted and that petitioner be provided a bond hearing.

**Background**

On September 27, 2015, petitioner presented himself at the San Ysidro, California port of entry and requested asylum.  ECF No. 10-1 at 2.  Border Patrol processed petitioner for expedited removal.  *Id*. at 2, 14.  Petitioner stated a credible fear of persecution or torture and was referred to immigration court for removal proceedings on October 27, 2015.  *Id.* at 11.  On May 5, 2016, petitioner was granted bond by the immigration court and released from custody.  *Id.* at 9.

Petitioner applied for employment authorization in February 2025. *Id.* at 7.

On April 25, 2026, petitioner was arrested by local authorities for aggravated assault with a firearm. *Id*. at 2; ECF No. 10-2 at 1. ICE placed a detainer with the local jail. ECF No. 10-2 at 10. Petitioner was charged with improper exhibition of a dangerous weapon and resisting an officer without violence. *Id.* at 18. ICE re-detained petitioner on April 27, 2026, after local authorities released him. ECF No. 10-1 at 1. Petitioner has been held in ICE custody since that date without a bond hearing. ECF No. 7 at 5; ECF No. 10 at 2.

## Procedural History

Petitioner, proceeding pro se, filed a petition for a writ of habeas corpus on June 9, 2026. ECF No. 1. Petitioner filed an amended petition on June 16, 2026. ECF No. 7. Respondents filed an answer on June 20, 2026, that addresses the petition and fails to respond to the amended petition.[1] ECF No. 10.

## Legal Standard

A federal court may grant habeas relief when a petitioner shows that his custody violates federal law. 28 U.S.C. §§ 2241(a), (c)(3), 2254(a); *Williams v. Taylor*, 529 U.S. 362, 374-75 (2000). "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). A district court's habeas jurisdiction includes challenges to immigration detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

---

[1] Additionally, petitioner has filed two motions for appointment of counsel. ECF Nos. 9 & 12. There currently exists no absolute right to appointment of counsel in habeas proceedings. *See Nevius v. Sumner*, 105 F.3d 453, 460 (9th Cir. 1996). Under 18 U.S.C. § 3006A, the court can appoint counsel at any stage of the case "if the interests of justice so require." *See* Rule 8(c), Fed. R. Governing § 2254 Cases. I do not find that the interests of justice require appointment of counsel at the present time. Petitioner's motions to appoint counsel are therefore denied.

2

**Analysis**

Petitioner claims that his re-detention without a bond hearing violates the Due Process Clause.  ECF No. 7 at 16.  Notably, respondents do not address petitioner's due process claim—presented in the amended petition—and they instead focus on the bases for relief presented in the original petition.  Principally, respondents argue that petitioner is detained under 8 U.S.C. § 1226(a), and because he has not sought a bond hearing in immigration court, his petition should be dismissed for failure to exhaust.  ECF No. 10 at 3.  However, "an exception to the exhaustion requirement has been carved for constitutional challenges to the Immigration and Naturalization Act and INS procedures because the BIA does not have jurisdiction to determine the constitutionality of the statutes it administers."  *Sola v. Holder*, 720 F.3d 1134, 1135 (9th Cir. 2013) (cleaned up).  Because petitioner has challenged the constitutionality of his re-detention, any exhaustion requirement is excused.  Moreover, respondent's arguments—that petitioner's detention is lawfully governed by section 1226—do not address whether his re-detention violates the Fifth Amendment.  *See* ECF No. 10 at 3-5.

Courts analyze procedural due process claims in two steps: first, we consider whether there exists a protected liberty interest under the Due Process Clause, and, second, we evaluate what procedures are necessary to ensure that any deprivation of that protected liberty interest accords with the Constitution.  *See Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989).  I consider each in turn.

To determine whether a specific conditional release rises to the level of a protected liberty interest, courts have compared "specific conditional release in the case before them with the liberty interest in parole as characterized by *Morrissey* [*v. Brewer*, 408 U.S. 471 (1971)]."  *Gonzalez-Fuentes v. Molina*, 607 F.3d 864, 887 (1st Cir. 2010) (internal quotation marks and citation omitted).  In *Morrissey*, the Supreme Court explained that parole from a criminal conviction "enables [the parolee] to do a wide range of things open to persons" who have never been in custody or convicted of any crime, including to live at home, work, and "be with family and friends and to form the other enduring attachments of normal life."  408 U.S. at 482.  The court observed that while "the [government] properly subjects [the parolee] to many restrictions

3

not applicable to other citizens," such as monitoring and seeking authorization to work and travel, the petitioner's "condition is very different from that of confinement in a prison." *Id.* "The parolee has relied on at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions." *Id.* The revocation of parole undoubtedly "inflicts a grievous loss on the parolee." *Id.* (quotations omitted). Therefore, in *Morrissey*, the Supreme Court found that a parolee in a criminal case possessed a protected interest in "continued liberty." *Id.* at 481-84.

Recently, confronted with issues similar to those raised by petitioner, courts in this Circuit have found that noncitizens released from immigration custody acquire a liberty interest in their continued release. *See, e.g.*, *Labrador-Prato v. Noem*, No. 1:25-cv-1598-DC-SCR, 2025 WL 3458802, at *5 (E.D. Cal. Dec. 2, 2025); *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025). "Even where the revocation of a person's freedom is authorized by statute, that person may retain a protected liberty interest under the Due Process Clause." *Rico-Tapia v. Smith*, No. 1:25-cv-00379-SASPKJM, 2025 WL 2950089, at *8 (D. Haw. Oct. 10, 2025) (citing *Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973) and *Morrissey v. Brewer*, 408 U.S. 471, 481-82 (1972)). I agree with the bulk of other courts to have considered the issues presented here and find that petitioner has a protected liberty interest in his continued release.

Petitioner was released into the United States on bond in May 2016. ECF No. 10-1 at 9. Since his release, petitioner has lived in the United States, subject to ICE supervision but outside of custody, for nearly ten years. Petitioner thereby formed "enduring attachments of normal life." *See Morrissey*, 408 U.S. at 482. I conclude that petitioner's initial release and time out of custody have created a constitutionally protected liberty interest in continued release. *See Guillermo M. R. v. Kaiser*, No. 25-cv-5436-RFL, 2025 WL 1983677, at *4 (N.D. Cal. July 17, 2025) (recognizing that "the liberty interest that arises upon release [from immigration detention] is *inherent* in the Due Process Clause"); *Ortega v. Kaiser*, No. 25-cv-5259-JST, 2025 WL 1771438, at *3 (N.D. Cal. June 26, 2025) (collecting cases finding released noncitizens to have strong liberty interests); *see also Capote v. Warden, Cal. City Corr. Ctr.*, No. 1:26-cv-3168-JLT-EPG, 2026 WL 1415306, *2 (E.D. Cal. May 20, 2026) (granting writ of habeas corpus where petitioner had been previously paroled into the United States pursuant to the Cuban Humanitarian Parole

4

program).

Once a court has found that a noncitizen has a liberty interest in continued release, the court must next determine what procedural protections the government must afford the noncitizen before depriving him of that liberty interest.  This requires balancing the factors laid out in *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).  *See Hernandez v. Sessions*, 872 F.3d 976, 993 (9th Cir. 2017) (applying *Mathews* factors in immigration detention context).

The *Mathews* test requires courts to consider:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews*, 424 U.S. at 335.

First, petitioner has a significant private interest in his continued release.  "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects."  *Zadvydas*, 533 U.S. at 690.  Petitioner has a private interest in his continued release that developed over almost a decade between his release and re-detention.  *See Noori v. LaRose*, No. 25-cv-1824-GPC-MSB, 2025 WL 2800149, at *10 (S.D. Cal. Oct. 1, 2025) ("Petitioner has a private interest in remaining free, which developed over the year he resided in the United States.").

Turning to the second *Mathews* factor, the risk of erroneous deprivation without a bond hearing is high.  Prior to paroling petitioner into the United States, respondents necessarily determined that he presented neither a danger to the community nor a risk of flight.  *See Pinchi*, 792 F. Supp. 3d at 1034 (explaining that a petitioner's "release from ICE custody after her initial apprehension reflected a determination by the government that she was neither a flight risk nor a danger to the community").  Absent a pre-deprivation bond hearing in front of a neutral arbiter, the risk of erroneous deprivation is high given the possibility that petitioner's re-detention will not be pursuant to a valid state interest.  *See Omer G.G. v. Kaiser*, No. 1:25-cv-01471-KES-SAB, 2025 WL 3254999, at *7 (E.D. Cal. Nov. 22, 2025) ("Civil immigration detention, which is

5

'nonpunitive in purpose and effect[,]' is justified when a noncitizen presents a risk of flight or danger to the community.") (quoting *Zadvydas*, 533 U.S. at 690).

"Where, as here, '[the petitioner] has not received any bond or custody . . . hearing,' 'the risk of an erroneous deprivation [of liberty] is high' because neither the government nor [the petitioner] has had an opportunity to determine whether there is any valid basis for her detention." *Pinchi*, 792 F. Supp. 3d at 1035 (quoting *Singh v. Andrews*, No. 1:25-cv-00801, 2025 WL 1918679, at *7 (E.D. Cal. July 11, 2025)).  Respondents offer no evidence or argument indicating that any procedural safeguards have been employed following petitioner's re-detention; more generally, they give the court no reason to believe that any efforts have been made to prevent erroneous deprivation of petitioner's liberty. *See id*.  Accordingly, "the probable value of additional procedural safeguards, i.e., a bond hearing, is high." *See A.E. v. Andrews*, No. 1:25-cv-0107-KES-SKO, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025), *report and recommendation adopted*, 2025 WL 1808676 (E.D. Cal. July 1, 2025).

"Third, the Government's interest in detaining Petitioner without . . . a hearing is 'low.'" *Salazar v. Casey*, No. 25-cv-2784-JLS, 2025 WL 3063629, at *5 (S.D. Cal. Nov. 3, 2025) (citation omitted).  "In immigration court, custody hearings are routine and impose a 'minimal' cost." *Carballo v. Andrews*, No. 1:25-cv-0978-KES-EPG, 2025 WL 2381464, at *8 (E.D. Cal. Aug. 15, 2025) (quoting *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. 2025)).  In fact, respondents indicate that they would have provided petitioner a bond hearing if he had properly asked for one, but they have not done so in response to his petition.  *See* ECF No. 10 at 5.  To the extent that the government maintains that petitioner is eligible for a bond hearing, it is unknown why the government has not facilitated such a hearing in light of petitioner initiating this action in May 2026.  *See e.g.*, *Ferdinand v. Warden*, No. 1:26-CV-0186-DJC-JDP, 2026 WL 1536774, at *3 (E.D. Cal. June 1, 2026).

Accordingly, a consideration of the *Mathews* factors demonstrates that petitioner's re-detention without a bond hearing violates his due process rights.  Given this finding, I must determine the appropriate remedy.  Petitioner seeks immediate release or a bond hearing.  ECF No. 7 at 17.  Respondents state that any relief should be "limited to permitting Hibbert to

requesting [sic] a bond hearing where he bears the burden of proving he is entitled to release." ECF No. 10 at 6.

The Supreme Court has recognized that "[h]abeas is at its core a remedy for unlawful executive detention," and the "typical remedy for such detention is, of course, release." *Munaf v. Geren*, 553 U.S. 674, 693 (2008); *see also Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 107 (2020) ("Habeas has traditionally been a means to secure *release* from unlawful detention."). To satisfy due process, "the Court usually has held that the Constitution requires some kind of a hearing *before* the State deprives a person of liberty or property." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990) (emphasis in original). In some circumstances, however, the Court has held that a post-deprivation hearing satisfies due process, such as where there is "the necessity of quick action by the State or the impracticality of providing any predeprivation process." *Id*. at 128 (cleaned up).

Here, petitioner was arrested for an aggravated assault with a firearm. ECF No. 10-1 at 1-2. He has been charged with improper exhibition of a dangerous weapon or firearm and resisting an officer without violence. ECF No. 10-2 at 18. Accordingly, there appears to have been "the necessity of quick action" by ICE such that due process did not require that petitioner be provided a pre-deprivation hearing. *See Zinermon*, 494 U.S. at 128.

Due process still required, however, that petitioner be afforded a "prompt post-deprivation hearing." *See Guillermo M.R.*, 791 F. Supp. 3d at 1036. Petitioner, as noted, has not been afforded such a hearing. Moreover, because petitioner's re-detention implicates due process concerns, the government needs to show by clear and convincing evidence that he is a danger to the community or a flight risk. *See Martinez v. Clark* 124 F.4th 775, 780 (9th Cir. 2024); *Lopez v. Garland*, 631 F. Supp. 3d 870, 882 n.9 (collecting cases). Accordingly, I find that the appropriate remedy is a bond hearing. *See Archundia v. Wofford*, No. 1:26-cv-1452-DJC-CSK, 2026 WL 607977, at *2 (E.D. Cal. Mar. 4, 2026) (finding a bond hearing to be the proper remedy where petitioner was previously arrested for "allegedly engaging in prostitution") (citing *J.S.H.M. v. Wofford*, No. 1:25-cv-1309-JLT-SKO, 2025 WL 2938808, at *15-16 (E.D. Cal. Oct. 16, 2025)).

**Conclusion**

Accordingly, it is hereby ORDERED that petitioner's motions for appointment of counsel, ECF No. 9 and ECF No. 12, are DENIED.

Further, it is hereby RECOMMENDED that:

1. The first amended petition for writ of habeas corpus, ECF No. 7, be GRANTED.

2. Petitioner (A-Number: 208-593-916) be provided a bond hearing before a neutral adjudicator within seven days of the date of the court's order.  Within 24 hours of the filing of the court's order, respondents shall personally serve petitioner with the order and file proof of such service on the docket.  At this bond hearing, the government shall bear the burden of establishing, by clear and convincing evidence, that petitioner poses a danger to the community or a risk of flight, and petitioner shall be allowed to have counsel present.

3. The Clerk of Court be ordered to enter judgment accordingly and close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within seven days of service of these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Any such document should be captioned "Objections to Magistrate Judge's Findings and Recommendations," and any response shall be served and filed within seven days of service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  *See Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:    July 2, 2026                          _____
                                               JEREMY D. PETERSON
                                               UNITED STATES MAGISTRATE JUDGE